**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**

| | |
|---|---|
| Amber Lynn Erb and Robert James Erb,<br><br>Plaintiffs,<br><br>vs.<br><br>General Motors LLC,<br><br>Defendant. | **CASE NO.: ________________**<br><br>**COMPLAINT** |

For this Complaint, the Plaintiffs Amber Lynn Erb and Robert James Erb, by undersigned counsel, state as follows:

## PRELIMINARY STATEMENT

1. This is an action by the purchasers of a 2023 Chevrolet Silverado 1500 vehicle (hereafter the "subject vehicle") manufactured and sold by the Defendant General Motors LLC. Plaintiffs seek damages related to their vehicle's defective engine and turbocharger and Defendant's failure to honor the terms of its warranty.

2. The Plaintiffs would not have purchased the subject vehicle had they been made aware of the subject vehicle's defects.

## JURISDICTION AND VENUE

3. This Court has jurisdiction over this matter pursuant to the Magnuson-Moss Warranty Act, 15 U.S.C. § 2310(d)(1)(B), in that Plaintiffs claim more than $50,000.00 in damages, exclusive of interest and costs.

4. This Court has supplemental jurisdiction over Plaintiffs' state law claims as set forth in 28 U.S.C. § 1367.

5. Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391(b)(1) as Defendant is subject to personal jurisdiction in this District and where Defendant, as principal, directs and controls warranty repairs on covered vehicles through its agents consisting of a dealership network located in this District.

6. Further, venue is appropriate in this Court pursuant to 28 U.S.C. § 1391(b)(2) in that a substantial part of the events giving rise to the Plaintiffs' claims occurred within this District.

## PARTIES

7. Plaintiffs Amber Lynn Erb and Robert James Erb were, at all relevant times, adult individuals who reside in Homosassa, Citrus County, Florida, and who purchased the subject vehicle in Post Falls, Kootenai County, Idaho, which was manufactured or sold by Defendant.

8. Defendant General Motors LLC ("GM") is organized under the laws of Delaware with its principal place of business located at 1240 Woodward Avenue, Detroit, Michigan 48226. At all relevant times, GM was engaged in the business of importing, assembling, marketing, distributing, and warranting GM automobiles in the State of Idaho and throughout the United States.

## FACTUAL ALLEGATIONS

9. On September 11, 2023, Plaintiffs purchased a new 2023 Chevrolet Silverado 1500 RST, Vehicle Identification Number 3GCUDEE8XPG340988 (hereafter the "Vehicle") from Knudtsen Chevrolet Co., an authorized GM dealership, in Post Falls, Kootenai County, Idaho.

10. Plaintiffs purchased the Vehicle for personal, family, or household use.

11. The purchase price of the Vehicle was $60,840.00, excluding options, fees, taxes, and finance charges.

12. Prior to purchasing the Vehicle, Plaintiffs relied upon Defendant's representations regarding Defendant's New Vehicle Limited Warranty that accompanied the sale of the Vehicle, including the representation that Defendant would repair the Vehicle; these representations were material to Plaintiffs' decision to purchase the Vehicle.

13. Specifically, under its New Vehicle Limited Warranty, Defendant promised to repair or replace components found to be defective in material or workmanship during the 3-year / 36,000-mile period following such vehicle delivery to consumer. Additionally, Defendant promised to repair or replace the powertrain components, including the Vehicle's engine and turbocharger, found to be defective in material or workmanship during the 5-year / 60,000-mile period following such vehicle delivery to consumer.

14. On September 11, 2023, and following the execution of the Vehicle purchase documents, Plaintiffs took delivery of the Vehicle.

15. The Vehicle is equipped with Defendant's 3.0-liter Duramax turbocharged diesel inline-six engine, which Defendant identifies by the regular production option code LZ0. Defendant introduced the LZ0 engine for the 2023 model year as the successor to its LM2 3.0-liter Duramax engine and installed it in, among other vehicles, the 2023 through 2026 Chevrolet Silverado 1500 and GMC Sierra 1500.

16. The LZ0 engine is equipped with a variable-geometry, liquid-cooled, ball-bearing turbocharger that is lubricated and cooled by the engine's own oil supply through a turbocharger oil feed pipe.

17. The LZ0 engine suffers from defects in materials, workmanship and design in its lubrication system that cause premature failure of the turbocharger and of the engine's internal rotating assembly, including the crankshaft and its bearings.

18. When the turbocharger's bearings fail, the turbocharger's impeller moves within its housing, engine oil passes into the exhaust and emissions aftertreatment system, and metallic debris is introduced into the engine's lubrication system.

19. When the crankshaft thrust bearing wears prematurely, the crankshaft shifts out of position, engine oil pressure falls, and the crankshaft and its bearings are scored by metallic intrusion, resulting in catastrophic engine failure.

20. Defendant has acknowledged these conditions in its own special coverage program and service bulletins, each of which it issued approximately two years after it sold the Vehicle to Plaintiffs.

21. In September 2025, Defendant issued Special Coverage N252508340, covering failures of the engine coolant control valve assembly in 2023 Chevrolet Silverado 1500 and 2023 GMC Sierra 1500 vehicles equipped with the LZ0 3.0-liter Duramax engine.

22. Special Coverage N252508340 extends coverage for that component for 15 years or 150,000 miles from the original in-service date, whichever occurs first, regardless of ownership, and identifies as symptoms an illuminated malfunction indicator lamp with diagnostic trouble code P1098, cooling fans that continue to run after the ignition is turned off, and visible coolant leakage at the valve.

23. The Vehicle falls within the population of vehicles covered by Special Coverage N252508340.

24. On October 21, 2025, Defendant issued Service Bulletin 25-NA-202, addressed to turbocharger failures in 2023 through 2026 Chevrolet Silverado 1500 and GMC Sierra 1500 vehicles, and 2025 Chevrolet Tahoe, Chevrolet Suburban and GMC Yukon vehicles, equipped with the LZ0 3.0-liter Duramax engine.

25. Service Bulletin 25-NA-202 describes the condition as oil leakage in the area of the turbocharger, smoke, a loss of engine power, and the setting of underboost diagnostic trouble code P0299, and directs Defendant's dealers to replace the turbocharger together with the turbocharger oil feed pipe in order to eliminate the risk of a restriction in the flow of oil to the turbocharger.

26. Defendant attributes the turbocharger failures described in Service Bulletin 25-NA-202 to the use of incorrect engine oil or to a low engine oil level.

27. Plaintiffs maintained the Vehicle with Mobil 1 ESP X2 0W-20 full synthetic engine oil, which meets Defendant's own dexosD diesel engine oil specification, together with a Mobil 1 M1-212A oil filter, and changed the Vehicle's engine oil and filter every 5,000 miles.

28. Defendant's own authorized dealers replaced the Vehicle's turbocharger three times, each time at no charge under Defendant's warranty, and at no time did Defendant or any of its dealers attribute any of those failures to Plaintiffs' maintenance of the Vehicle.

29. On October 1, 2025, Defendant issued Technical Service Bulletin 25-NA-307, addressed to excessive crankshaft end play and crankshaft thrust bearing wear in the LZ0 3.0-liter Duramax engine.

30. Technical Service Bulletin 25-NA-307 identifies as symptoms a knocking or rattling noise from behind the bellhousing, a low engine oil pressure warning, and the setting

of diagnostic trouble code P06DD, and directs Defendant's technicians to measure crankshaft end play with a dial indicator and to inspect the crankshaft thrust surfaces for damage.

31. Technical Service Bulletin 25-NA-307 is written for 2025 and 2026 model year vehicles equipped with the LZ0 engine. Upon information and belief, the LZ0 engine installed in the Vehicle was built to the same specifications and by the same manufacturing processes as the LZ0 engines that bulletin addresses, and suffers from the same crankshaft thrust bearing defect.

32. On September 20, 2024 - more than a year before Defendant published Technical Service Bulletin 25-NA-307 - Defendant's own authorized dealer recorded diagnostic trouble code P06DD on the Vehicle and returned the Vehicle to Plaintiffs without repairing it.

33. Defendant has issued no safety recall for the turbocharger and crankshaft thrust bearing failures described above. A technical service bulletin is a communication to Defendant's dealers; unlike a safety recall, Defendant does not mail it to the owners of the affected vehicles, and Plaintiffs received no notice of it.

34. Upon information and belief, Defendant knew or should have known of the defects described above before it sold the Vehicle to Plaintiffs on September 11, 2023, from pre-production and pre-sale design validation, durability and quality testing of the LZ0 engine and of its turbocharger and crankshaft bearings; from supplier and manufacturing quality data; from warranty claims data and field reports; and from internal engineering analyses.

35. Defendant nevertheless did not disclose the defects to Plaintiffs, to the National Highway Traffic Safety Administration, or to the purchasing public at or before the time of sale.

36. Defendant did not acknowledge the defects at all until it issued Special Coverage N252508340 in September 2025 and Service Bulletins 25-NA-202 and 25-NA-307 in October 2025 - approximately two years after it sold the Vehicle to Plaintiffs, and after the Vehicle's turbocharger had already failed twice.

37. On September 20, 2024, Plaintiffs took the Vehicle to Windy Chevrolet in Ellensburg, Washington, Defendant's authorized dealership (hereinafter "Windy Chevrolet"), because the Vehicle lost power and displayed a "Drive With Caution" message on the driver information center.

38. At the time the Vehicle's odometer read 27,269 miles.

39. Windy Chevrolet found diagnostic trouble code P06DD, for Engine Oil Pressure Control Valve Performance, stored in the Vehicle, and returned the Vehicle to Plaintiffs without repairing the condition, stating that it could not duplicate the concern.

40. During the same visit, Windy Chevrolet performed Defendant's field action N242435631 and reprogrammed the Vehicle's serial data gateway module and radio.

41. During this visit, the Vehicle was out of service for eight (8) days, and ready for pick up on September 27, 2024.

42. On January 15, 2025, Plaintiffs took the Vehicle to Speck Buick GMC of Tri-Cities in Pasco, Washington, Defendant's authorized dealership (hereinafter "Speck Buick GMC"), because the check engine light was illuminated and the Vehicle was operating in limp mode.

43. At the time the Vehicle's odometer read 30,815 miles.

44. Speck Buick GMC found diagnostic trouble code P003A, for Turbocharger/Supercharger Boost Control Position Exceeded Learning Limit, determined that

the Vehicle's turbocharger vane position actuator was binding, and replaced the Vehicle's turbocharger.

45. Defendant paid for this repair under its warranty.

46. During this visit, the Vehicle was out of service for twenty-one (21) days, and ready for pick up on February 4, 2025.

47. Later the same day, after Plaintiffs had taken possession of the Vehicle, Plaintiffs returned the Vehicle to Speck Buick GMC because smoke was coming from the engine compartment and a strong exhaust odor was present in the passenger cabin.

48. At the time the Vehicle's odometer read 30,955 miles.

49. Speck Buick GMC found that the Vehicle's turbocharger clamp had come loose and installed a new clamp.

50. Defendant paid for this repair under its warranty.

51. During this visit, the Vehicle was out of service for one (1) day, and ready for pick up on February 4, 2025.

52. On February 17, 2025, Plaintiffs took the Vehicle to Ferman Chevrolet Volvo of Tarpon Springs in Tarpon Springs, Florida, Defendant's authorized dealership (hereinafter "Ferman Chevrolet"), because the Vehicle smelled of coolant when the heater was in use.

53. At the time the Vehicle's odometer read 31,206 miles.

54. Ferman Chevrolet reported that it found no leaks and that the Vehicle's cooling system was "working to design at this time," and returned the Vehicle to Plaintiffs without repair.

55. Approximately seven months later, Defendant issued Special Coverage N252508340 for failures of the engine coolant control valve assembly in vehicles of the

Vehicle's model, model year and engine, identifying coolant leakage at the valve as a symptom of that failure.

56. During this visit, the Vehicle was out of service for forty-five (45) days, and ready for pick up on April 2, 2025.

57. On August 25, 2025, Plaintiffs took the Vehicle to Jenkins Chevrolet of Homosassa in Homosassa, Florida, Defendant's authorized dealership (hereinafter "Jenkins Chevrolet"), because the check engine light was illuminated.

58. At the time the Vehicle's odometer read 42,613 miles.

59. Jenkins Chevrolet found that the Vehicle's turbocharger was not creating boost, removed the turbocharger for inspection, and found that its impeller was loose inside the housing and that the turbocharger had no bearings left.

60. Jenkins Chevrolet further found that the failed turbocharger had discharged an excessive quantity of engine oil into the Vehicle's exhaust aftertreatment system, that oil had burned onto the first two exhaust temperature sensors, and that the Vehicle's diesel particulate filter was contaminated with metal and oil.

61. Jenkins Chevrolet replaced the Vehicle's turbocharger and turbocharger oil lines, and replaced the diesel particulate filter, the exhaust temperature sensors and a nitrogen oxide sensor.

62. Defendant paid for these repairs under its warranty.

63. During this visit, the Vehicle was out of service for fifty-nine (59) days, and ready for pick up on October 22, 2025.

64. On October 24, 2025 - two days after Defendant returned the Vehicle to Plaintiffs - Plaintiffs took the Vehicle back to Jenkins Chevrolet because of a loud rattling noise under the hood.

65. At the time the Vehicle's odometer read 43,347 miles.

66. Jenkins Chevrolet found that the noise was coming from the area of the turbocharger but was deeper than the turbocharger, removed the oil filler cap and observed excessive smoke coming from inside the engine, cut open the Vehicle's oil filter and observed metal flakes inside it, and removed the oil pan and discovered large chunks of metal in the pan.

67. On the instruction of Defendant's Technical Assistance Center, Jenkins Chevrolet disassembled the engine to the point of failure, removed the crankcase extension housing, the main bearing caps and the rod bearing caps, and found the Vehicle's crankshaft and bearings scored from metal intrusion.

68. Jenkins Chevrolet replaced the Vehicle's engine, replaced the Vehicle's turbocharger for the third time, and replaced the turbocharger oil lines, on the guidance of Defendant's Technical Assistance Center.

69. After the replacement engine was installed, the Vehicle's radiator developed a leak at its side tanks, and Jenkins Chevrolet replaced the radiator.

70. Defendant paid for these repairs under its warranty.

71. During this visit, the Vehicle was out of service for sixty-nine (69) days, and ready for pick up on December 31, 2025.

72. Upon information and belief, the replacement engine Defendant installed in the Vehicle in December 2025 was manufactured, or remanufactured, to the same specifications

and by the same manufacturing processes as the engine it replaced, and suffers from the same defects. The Vehicle therefore remains equipped with a defective LZ0 engine.

73. The defects described herein present an unreasonable risk to the safety of Plaintiffs and of others on the roadway, in that they cause the Vehicle to lose engine power and to enter reduced-power or limp mode while being driven, cause smoke to enter the engine compartment and the passenger cabin, and expose the Vehicle to a sudden loss of propulsion.

74. The defects described herein have substantially diminished the value of the Vehicle.

75. Had Plaintiffs known that the Vehicle was equipped with a defective LZ0 engine and turbocharger, they would not have purchased the Vehicle, or would have paid substantially less for it.

76. By letter dated May 12, 2026, sent to Defendant via first class mail, Plaintiffs, through undersigned counsel, notified Defendant of the defects described herein, revoked acceptance of the Vehicle pursuant to U.C.C. § 2-608, and demanded the return of all monies paid.

77. Defendant did not make a good-faith response to Plaintiffs' letter, did not repurchase the Vehicle, and did not replace it.

78. On August 7, 2026, Plaintiffs took the Vehicle to Jenkins Chevrolet because the replacement engine was consuming three quarts of engine oil every two thousand miles; because the Vehicle idled roughly, felt sluggish under acceleration, emitted a frequent burning odor and appeared to enter diesel particulate filter regeneration more often than expected; and because the Vehicle shuddered badly at highway speeds, slammed into reverse, hesitated to shift and shifted harshly.

79. At the time the Vehicle's odometer read 69,202 miles.

80. Jenkins Chevrolet advised Plaintiffs that an oil change and an engine oil consumption test would be required, and reported that it was unable to duplicate the rough idle, the sluggishness and the burning odor.

81. Jenkins Chevrolet found the Vehicle's automatic transmission fluid to be full but very dirty, with a large quantity of shiny metallic particles in it, verified a torque converter shudder with slippage in excess of 250 revolutions per minute, and replaced the torque converter assembly.

82. Defendant paid for these repairs under its warranty.

83. During this visit, the Vehicle was out of service for twenty-five (25) days, and ready for pick up on August 31, 2026.

84. On September 2, 2026, Plaintiffs took the Vehicle to Jenkins Chevrolet because the Vehicle was again operating in reduced power and displayed a warning that it was eighty-six miles from reduced acceleration.

85. At the time the Vehicle's odometer read 69,990 miles.

86. Jenkins Chevrolet found diagnostic trouble code P20E8, for low diesel exhaust fluid pressure, determined that the internal pump in the Vehicle's diesel exhaust fluid tank had failed, and replaced the diesel exhaust fluid tank assembly.

87. Jenkins Chevrolet further found the Vehicle's rear pinion seal leaking oil and replaced the seal.

88. Defendant paid for these repairs under its warranty.

89. During this visit, the Vehicle was out of service for three (3) days, and ready for pick up on September 4, 2026.

90. In total, the Vehicle has been out of service at least two hundred thirty-one (231) days due to engine failure, repeated turbocharger failure and other defects.

91. The defects experienced by Plaintiffs substantially impair the use, value, and safety of the Vehicle.

92. Plaintiffs provided the Defendant, or one or more of its authorized or franchised dealers, with reasonable opportunity to repair the problems with the Vehicle.

93. The Defendant has neglected, failed, or otherwise been unable to repair the substantial impairments to the Vehicle within a reasonable amount of time.

**FIRST CAUSE OF ACTION**
**Breach of Warranty Pursuant to the Magnuson-Moss Warranty Act, 15 U.S.C. §2301, *et seq.***

94. The Plaintiffs incorporate by reference all of the above paragraphs of this Complaint as though fully stated herein.

95. Each Plaintiff is a "consumer" as defined in 15 U.S.C. § 2301(3).

96. Defendant is a "supplier" and "warrantor" as defined in 15 U.S.C. § 2301(4) and (5).

97. The subject vehicle is a "consumer product" as defined in 15 U.S.C. § 2301(1).

98. 15 U.S.C. § 2310(d)(1) provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with a written or implied warranty.

99. 15 U.S.C. § 2304(a)(1) requires Defendant, as warrantor, to remedy any defect, malfunction or nonconformance of the subject vehicle within a reasonable time and without charge to the Plaintiffs.

100. Defendant has failed to remedy the subject vehicle's engine and turbocharger defects within a reasonable time, thereby breaching the written and implied warranties applicable to the subject vehicle.

101. As a result of Defendant's breaches of written and implied warranties, and Defendant's failure to remedy the same within a reasonable time, Plaintiffs have suffered damages.

**SECOND CAUSE OF ACTION**
**Breach of Implied Warranty of Merchantability Pursuant to the Magnuson-Moss Warranty Act, 15 U.S.C. §2301, *et seq.* and Idaho Code § 28-2-314**

102. Plaintiffs incorporate by reference all of the above paragraphs of this Complaint as though fully stated herein.

103. Defendant is a merchant with respect to motor vehicles.

104. The Vehicle was subject to the implied warranty of merchantability, as defined in Idaho Code § 28-2-314, running from the Defendant to the Plaintiffs.

105. An implied warranty that the subject vehicle was merchantable arose by operation of law as part of the purchase of the subject vehicle.

106. Defendant breached the implied warranty of merchantability in that the subject vehicle was not in merchantable condition when Plaintiffs purchased it, or at any time thereafter, and the subject vehicle is unfit for the ordinary purposes for which such vehicles are used.

107. Plaintiffs notified Defendant of the defect in the subject vehicle within a reasonable time after Plaintiffs discovered it.

108. As a result of Defendant's breach of the implied warranty of merchantability, Plaintiffs have suffered damages, including but not limited to incidental and consequential damages.

**THIRD CAUSE OF ACTION**
**Breach of Express Warranty, Idaho Code § 28-2-313**

109. Plaintiffs incorporate by reference all of the above paragraphs of this Complaint as though fully stated herein.

110. In connection with the sale of the subject vehicle to the Plaintiffs, Defendant provided Plaintiffs with a New Vehicle Limited Warranty and Limited Powertrain Warranty, and subsequently issued Special Coverage N252508340, under which it agreed to repair original components found to be defective in material or workmanship under normal use and maintenance, including the engine and its components.

111. Plaintiffs relied on Defendant's warranty when they agreed to purchase the subject vehicle and Defendant's warranty was part of the basis of the bargain.

112. Plaintiffs submitted their Vehicle for warranty repairs as referenced herein. Defendant failed to comply with the terms of the express written warranty provided to Plaintiffs, by failing to repair the dangerous engine defect under the vehicle's warranty as described herein within a reasonable period of time.

113. Plaintiffs have given Defendant reasonable opportunities to cure said defects, but Defendant has been unable and/or has refused to do so within a reasonable time.

114. As a result of said nonconformities, Plaintiffs cannot reasonably rely on the subject vehicle for the ordinary purpose of safe, comfortable, and efficient transportation.

115. The Plaintiffs could not reasonably have discovered said nonconformities with the subject vehicle prior to Plaintiffs' acceptance of the subject vehicle.

116. The Plaintiffs would not have purchased the subject vehicle, or would have paid less for the subject vehicle, had they known, prior to the time of purchase, that the subject vehicle contained a defective engine.

117. As a direct and proximate result of the willful failure of Defendant to comply with its obligations under the express warranty, Plaintiffs have suffered actual and consequential damages. Such damages include, but are not limited to, the loss of the use and enjoyment of their vehicle, and a diminution in the value of the subject vehicle containing the defects identified herein.

**FOURTH CAUSE OF ACTION**
**Revocation of Acceptance, Idaho Code § 28-2-608**

118. Plaintiffs incorporate by reference all of the above paragraphs of this Complaint as though fully stated herein.

119. Plaintiffs reasonably assumed, and Defendant represented, that all of the aforesaid defects would be cured within a reasonable time.

120. After numerous opportunities by Defendant to cure, it has become apparent that said defects cannot be seasonably cured.

121. The defects substantially impair the value of the Vehicle to the Plaintiffs.

122. By a letter dated May 12, 2026, the Plaintiffs notified Defendant of said defects and of Plaintiffs' intent to revoke acceptance and demanded return of the purchase price of said Vehicle.

123. Defendant has nevertheless failed to make a good-faith response to this demand.

124. As a result of Defendant's conduct the Plaintiffs have been damaged.

**FIFTH CAUSE OF ACTION**
**Unfair and Deceptive Practice, Idaho Code § 48-603**

125. The Plaintiffs incorporate by reference all allegations contained in this Complaint as though fully stated herein.

126. The sale of the Vehicle to the Plaintiffs under the guise that it was free from defects that would substantially impair the use, safety, or value of the Vehicle represents an unlawful or deceptive trade practice under Idaho Code § 48-603.

127. Defendant violated Idaho Code § 48-603 in one or more of the following ways:

(a) representing the subject Vehicle to be of good, merchantable quality, free of defects, when in fact it was not;

(b) representing that the repairs could be performed properly, within a reasonable time, when Defendant knew, or in the exercise of reasonable care, should have known that this was not the case;

(c) failing to repair the Vehicle within a reasonable period of time in violation of Idaho Code § 48-603;

(d) willfully failing to disclose, and actively concealing, the known defects in the LZ0 3.0-liter Duramax engine and its turbocharger described herein.

128. Defendant is in the business of selling motor vehicles and therefore the violations are likely to affect the general public, now and in the future.

129. Furthermore, the Defendant failed to tender a reasonable settlement within thirty (30) days of its receipt of a written demand for relief which identified their failure to fulfill their obligations under the warranty and stated the Plaintiffs' injury.

130. Defendant violated the law willfully and knowingly.

**DEMAND FOR RELIEF**

WHEREFORE, the Plaintiffs demand judgment against Defendant as follows:

a. An order approving revocation of acceptance of the subject vehicle;

b. Money damages, in the form of a refund of the full contract price, including trade-in allowance, taxes, fees, insurance premiums, interest, and costs, and a refund of all payments made by Plaintiffs on the subject contract;

c. Incidental and consequential damages;

d. Punitive damages;

e. Reasonable attorney's fees;

f. Such other and further relief as this Court deems just and proper.

**TRIAL BY JURY DEMANDED ON ALL COUNTS**

Dated: November 20, 2026

By: /s/ Sergei Lemberg

Sergei Lemberg, Esq.
LEMBERG LAW, L.L.C.
43 Danbury Road
Wilton, CT 06897
Telephone: (203) 653-2250
Facsimile: (203) 653-3424
*Attorneys for Plaintiffs*